# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF PUTNAM

---

STU MAVROS and PAULA MAVROS,

      Plaintiffs,

      -vs-

NEW YORK STATE FEDERATION OF
SEARCH & RESCUE TEAMS, INC., RICK
SHILLING, JOHN DOES 1-5, and JANE
DOES 1-5,

      Defendants.

---

Index No.: 500800/2024

**SUMMONS**

Plaintiffs designate Putnam County as the place of the trial. The basis of venue is: Defendant Rick Shilling resides in Putnam County.

To the above-named Defendants:

      **YOU ARE HEREBY SUMMONED** to answer the Amended Verified Complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York).

      **YOU ARE HEREBY NOTIFIED THAT** should you fail to answer or appear, a judgment will be entered against you by default for the relief demanded below.

Dated: May 10, 2024
      Brooklyn, NY

                             **MARZEC LAW FIRM, P.C.**

             By:    */s/ Darius Marzec*
                   Darius A. Marzec, Esq.
                   Attorneys for Plaintiffs
                   776A Manhattan Avenue, Suite 104
                   Brooklyn, NY 11222
                   (718) 609-0303
                   (718) 841-7508 Fax

Type of Action: Defamation

Defendants:

Rick Shilling
207 Couch Rd
Patterson, NY 12563

1

Case 1:24-cv-04735   Document 1-1   Filed 06/21/24   Page 3 of 20

New York State Federation of Search & Rescue Teams, Inc.
1072 Ballston Lake Road
Ballston Lake, NY 12019

Case 1:24-cv-04735   Document 1-1   Filed 06/21/24   Page 3 of 20

2

Case 1:24-cv-04735 Document 1-1 Filed 06/21/24 Page 4 of 20

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF PUTNAM

---

STU MAVROS and PAULA MAVROS,

        Plaintiffs,

-vs-

NEW YORK STATE FEDERATION OF SEARCH & RESCUE TEAMS, INC., RICK SHILLING, JOHN DOES 1-5, and JANE DOES 1-5,

        Defendants.

---

Index No.: 500800/2024

**AMENDED VERIFIED COMPLAINT**

**JURY TRIAL DEMANDED**

---

Plaintiffs STU MAVROS and PAULA MAVROS (collectively "Plaintiffs"), by their attorneys, Marzec Law Firm, P.C., complaining of Defendants NEW YORK STATE FEDERATION OF SEARCH & RESCUE TEAMS, INC. ("NYSFEDSAR"), RICK SHILLING ("Defendant Shilling"), JOHN DOES 1-5, and JANE DOES 1-5, respectfully allege:

1.     This is an action for breach of contract, defamation, slander per se, and prima facie tort.

2.     Plaintiffs plead their own conduct on knowledge. The remainder of this Complaint is pled on information and belief.

### PARTIES

3.     Plaintiff STU MAVROS is an individual residing at 257 New Road, Montague, NJ 07827.

4.     Plaintiff PAULA MAVROS is an individual residing at 257 New Road, Montague, NJ 07827.

5.     Plaintiffs are husband and wife and are also partners in the Search and Rescue ("SAR") community. Defamations about Plaintiff Stu Mavros relating to SAR also damage

Plaintiff Paula Mavros. In addition, some of the defamatory statements made and/or repeated by Defendants concerned Mrs. Mavros.

6.      Defendant NYSFEDSAR is a New York not-for-profit corporation formed in 1984 with an address in Ballston Lake, New York. NYSFEDSAR is an association of Search and Rescue ("SAR") teams whose members are located across New York State, with some members in states bordering New York, including at least three teams in New Jersey. NYSFEDSAR does not perform SAR operations itself, although its member organizations do. However, NYSFEDSAR engages in joint activities with its member organizations, including jointly promulgating SAR certification standards and coordinating and organizing activities among its member organizations. It is in frequent contact with its member organizations and other SAR organizations.

7.      Defendant Shilling is an individual and resident of Putnam County, New York and was Chairman of NYSFEDSAR at all times relevant hereto. As Chairman. Defendant Shilling arranged and presided over the communications and virtual meetings among the officers and members of NYSFEDSAR that are central to this action.

8.      Defendants JOHN DOES 1-5 and JANE DOES 1-5 are as-yet unidentified persons or other legal entities who published or republished the misrepresentations complained of herein.

## JURISDICTION AND VENUE

9.      This Court has personal jurisdiction over Defendants in this matter as each Defendant resides in the State of New York and the action concerns events that occurred in the State of New York. Venue is appropriate in Putnam County because Defendant Shilling, Chairman of Defendant NYSFEDSAR, resides in Putnam County and, on information and belief, received and republished the defamations complained of herein from Putnam County.

2

## SUMMARY OF THE CLAIMS

10.     This action seeks redress for Defendants' misrepresentations by which they fraudulently validated defamatory accusations made to them about Plaintiff Stu Mavros, for Defendants' wrongful republication of those false and defamatory accusations, for slander per se, prima facie tort, and breach of contract.

11.     Plaintiffs are experienced Search and Rescue ("SAR") volunteers with decades of experience. Defendants promised to give fair and impartial consideration to Plaintiffs' application for membership in NYSFEDSAR. Defendants received defamatory misinformation about Plaintiffs. Defendants then falsely validated those defamations by fraudulently stating that they had investigated and confirmed them when they had not done so, and then republished those accusations within NYSFEDSAR.

12.     On information and belief, NYSFEDSAR then recklessly repeated, perpetuated, and republished the false, defamatory misinformation to NYSFEDSAR's member organizations and others.

13.     After falsely validating and republishing those defamations within NYSFEDSAR, Defendants concealed that they had even received them. When Plaintiffs asked why their application was not being acted on, Defendants concealed the fact that they had received the defamations. Ultimately, Defendants admitted that they had received negative information and purported to give Plaintiffs an opportunity to explain why the defamations were false. But instead of giving Plaintiffs an actual opportunity to rebut those defamations, Defendants refused to disclose what the defamations were. Moreover, unbeknownst to Plaintiffs, by then, some of the damage to their reputations had already occurred.

Case 1:24-cv-04735   Document 1-1   Filed 06/21/24   Page 7 of 20

14.     As a result, Plaintiffs suffered damage to their reputations within the SAR community in New York and New Jersey that effectively erased 35 years (Mr. Mavros) and 33 years (Mrs. Mavros) of good and faithful service to the mission of SAR.

## FACTUAL HISTORY AND BASES OF CLAIMS

### Plaintiffs' Devotion to, and Experience in, Search and Rescue

15.     Plaintiffs have devoted their entire adult lives to Search and Rescue ("SAR"), and SAR has been the focus of their lives. Since 1987, Stu Mavros and, since 1989, Paula Mavros, in addition to earning a living, have at times devoted 30-40 hours per week to SAR. During the course of this time they have been involved in K9 (canine) SAR, search management, and patient care. All of this time was given in service; none was for any monetary compensation.

16.     On April 19, 1995, the day of the bombing of the Alfred P. Murrah Federal Building in Oklahoma City, Plaintiff Stu Mavros, entered the building with legal authorization and at great personal peril to himself as the building had just been bombed and was subject to collapse. At one point, Mr. Mavros had to evacuate the building when the possibility of a second explosive device was discovered. After that threat was removed, Mr. Mavros and his K9 returned and, along with another member of his team, Mr. Mavros and their K9s provided information that led to the location of the only known trapped survivor of that blast, saving that person's life.

17.     Immediately after the devastation wrought by the Oklahoma City tornado of May 3, 1999, Plaintiff Stu Mavros volunteered to search for survivors, despite the risk of open gas lines and the possibility of being exposed to gas explosions.

18.     Although Mr. Mavros seeks to avoid discussion of the danger that he has put himself in for SAR over the decades of his dedicated service, he can recount other instances where he put his life or health on the line in service to SAR.

4

19.     During the period 1987 through approximately 2017, Plaintiffs successfully built a strong reputation in the SAR communities in which they were active, based on their knowledge of, experience in, and devotion to, SAR.

20.     Plaintiff Stu Mavros was a wildland fire fighter and a member of the New Jersey Forest Fire Service, Division A Section 2, which originally founded New Jersey Search and Rescue ("NJSAR") in approximately 1987. Thereafter, he lived in Oklahoma for many years.

21.     Around 2009, Mr. and Mrs. Mavros were spending more time in New Jersey and joined a K9-only Search and Rescue Team. In 2013, following the retirement of Mr. Mavros' then K9, Mr. and Mrs. Mavros resigned from that team and joined NJSAR, Mr. Mavros was elected Lieutenant, and became K9 Lead at the end of 2015.

### The Defamatory Statements Against Plaintiffs

22.     Starting in 2017, the Mavroses became concerned that certain practices at NJSAR violated applicable safety and operational standards and therefore posed dangers to both its members and potential rescued parties. Accordingly, the Mavroses attempted to rectify those practices.

23.     A closely-knit group of officers of NJSAR erroneously perceived the Mavroses' attempts to improve NJSAR's safety and operations as attempts to wrest control of NJSAR from those officers. In response, those officers engaged in a concerted campaign to undermine the progress and advancement of the K9 Committee, defame and belittle Mrs. Mavros due to her disability, and undermine and defame Mr. Mavros in order to remove Mr. Mavros as a perceived threat to their authority and control.

24.     The actions taken by those officers included, but were not limited to, misrepresenting the actions of Mr. Mavros and the members of the K9 Committee, excluding representatives of the K9 Committee from drill planning sessions, and overriding the valid re-

5

election of Plaintiff Stu Mavros to the position of Lieutenant of NJSAR. The NJSAR officers also refused to recognize Mr. Mavros appointment of Mrs. Mavros as his appointed K9 Liaison. In taking actions to undermine Mr. Mavros, those officers violated many of NJSAR's Bylaws and other applicable rules.

25.     Starting toward the end of 2017, continuing through 2018, and into the early parts of 2019, Mr. Mavros had been advising NJSAR Chief Mr. Adam Levin (the "NJSAR Chief"), and then NJSAR President Mr. Oren Levin (the "NJSAR President") of the exclusion of K9 from drill planning. In May of 2019, Mr. and Mrs. Mavros voiced their concerns to the NJSAR Trustees. Following that May 2019 meeting with the NJSAR Trustees, in which Mr. and Mrs. Mavros objected to the exclusion of the K9 Committee from drill planning in violation of the NJSAR Bylaws, the officers made false accusations against Mr. Mavros and against the K9 Committee in general. Those false accusations were made public in emails and read at a meeting before the entire organization and the public. Mr. Mavros was removed as K9 Lead, the K9 Committee was placed on hiatus, and K9 Members were unable to train their dogs in any NJSAR training events. Placing the K9 Committee on hiatus also prevented its members from accruing participation points for K9 events. Points are needed for members to remain in good standing, and good standing is required to vote and hold office or leadership positions.

26.     In July of 2019, Mr. Mavros presented the President of NJSAR with documents setting forth the officers' violations of NJSAR's Bylaws.

27.     In August of 2019, at an NJSAR team meeting, Chief of NJSAR read the entire team a list of false accusations against Mr. Mavros and the rest of the K9 Members.

28.     In two letters dated on or about November 7, 2019, certain officers of NJSAR made formal accusations against Mr. Mavros containing a variety of defamations, including that Mr.

6

Mavros and/or his dog were in some way physically dangerous, that NJSAR members and/or prospective members had withdrawn out of fear of Mr. Mavros and/or his dog, that Mr. Mavros had acted in a "threatening" manner, that Mr. Mavros had acted in an "unbecoming" manner, and that Mr. Mavros was ineffective as the leader of the K9 committee.

29.     A biased and conflicted "disciplinary committee" was convened to "investigate" the charges and to determine the consequences. The committee did not do any factual investigation of those charges. Instead, the committee rubberstamped all of the charges. The committee then determined that draconian disciplinary measures were required. On December 29, 2019, the NJSAR Trustees agreed with the committee that the charges were "justified." Thus, these defamations resulted in a wrongful censure of Plaintiff Stu Mavros by the Trustees of NJSAR.

30.     One of the NJSAR Trustees who reviewed the charges against Mr. Mavros had helped to write the charges in the first place. Another was the only verifiable member of the Bylaws committee of NJSAR, the group responsible for enforcing and applying the very bylaws that Mr. Mavros had stated had been violated. Both of those Trustees were biased. Additionally, the Trustees considered only accusations against Mr. Mavros, conducted no investigation, reviewed no evidence, and failed to hear any evidence presented by Mr. Mavros. Mr. Mavros was denied his appeal as required in NJSAR's Bylaws.

31.     The officers also defamed Mr. Mavros and the K9 team by stating that the members had poor attendance records when in fact their attendance was impeded by having been put "on hiatus."

### The NJSAR Officers Continue to Defame Plaintiffs

32.     Not satisfied with this smear and act of defamation, certain members of NJSAR continued to disseminate falsehoods about Plaintiffs within other members of the New York and New Jersey SAR communities, including NYSFEDSAR.

7

33.     On or about January 21, 2020, Plaintiffs resigned from NJSAR. Plaintiffs and the former members of NJSAR's K9 Committee then formed their own SAR organization, which was composed of all the former members of NJSAR's K9 Committee, who had resigned from NJSAR at the same time as Plaintiffs due to the continuing oppression of the K9 Committee by officers antagonistic to Mr. Mavros. Other members of NJSAR also joined Plaintiffs in forming Plaintiffs' new SAR organization.

34.     Plaintiff Stu Mavros was also a Board member of the SAR Council of New Jersey ("SARCNJ"), and plaintiff Paula Mavros was the Vice President. During January and February of 2020, certain NJSAR officers defamed Plaintiffs to SARCNJ by falsely claiming that dog/handler teams had not been properly certified when they had in fact been properly certified, and by making multiple other untrue and unsupported defamatory statements.

### Defendants' Receipt of Defamations of Plaintiffs

35.     On or about January 20, 2021, Plaintiffs applied for membership in NYSFEDSAR on behalf of their new SAR team. The application was made to Defendant Shilling in his capacity as Chairman of NYSFEDSAR per the instructions on the application.

36.     That application was discussed at NYSFEDSAR Board meetings, which included representatives of each member team, until April of 2021.

37.     At some point before the NYSFEDSAR Board meeting of April of 2021, Defendants received defamatory misinformation about Plaintiffs, set forth more fully below, from a former NJSAR officer who was carrying a grudge against Plaintiffs, Erica Gelb Winterbottom. In the New Jersey action, each defendant has admitted under oath and in writing that,

> beginning in or around April 2021, [New Jersey] Co-defendant Erica Winterbottom contacted then current NYSFEDSAR Vice President John Bulmer (now former) and informed him that Stuart Mavros was subject to disciplinary action while a member of New Jersey Search and Rescue, Inc. ("NJSAR"). John Bulmer advised

8

her to contact Rick Shilling regarding her concerns with Mr. Mavros. Ms. Winterbottom then contacted Rick Shilling and advised him of Mr. Mavros' disciplinary history.

(Bracketed text added for clarity.)

38.     Ms. Winterbottom made at least the following false accusations against Plaintiffs to Defendants:

> a.     That Plaintiff Stu Mavros had threatened the physical safety of NJSAR members;
>
> b.     That at least two prospective NJSAR members withdrew their membership applications out of fear of Plaintiff Stu Mavros;
>
> c.     That Mr. Mavros had engaged in "extortion";
>
> d.     That Mr. Mavros had engaged in "discrimination" on the basis of physical challenges;
>
> e.     That Mr. Mavros is "aggressive" and a "bully";
>
> f.     That, at NJSAR team meetings, Mr. Mavros engaged in "aggressive body language including yelling, posturing, pointing fingers, stomping around the meeting room, slamming folders on desks, invading personal space"; and
>
> g.     That, under Mr. Mavros' leadership, NJSAR's K9 Committee had a history of excessive absenteeism.

39.     Plaintiffs are currently pursuing an action against Ms. Winterbottom and other NJSAR officers in New Jersey. Defendants NYSFEDSAR and Shilling were defendants in that action until November 17, 2023, when they were dismissed on lack of sufficient personal contacts with the State of New Jersey.

40.     As a result of Defendants' receipt of defamatory misinformation from Ms. Winterbottom, which Defendants never investigated, Defendants tabled Plaintiffs' application, and it was not officially addressed at NYSFEDSAR's meeting of April, 2021. NYSFEDSAR's

9

meetings included representatives of all of NYSFEDSAR's member SAR organizations, which

included organizations throughout all of New York and parts of New Jersey.

### Defendants' Republication of the Misrepresentations

41.     Instead of asking Plaintiffs about the accusations or investigating them, on April

30, 2021, Defendant Shilling republished certain of the accusations to the other officers of

NYSFEDSAR. Specifically, on April 30, 2021, Defendant Shilling sent an email to the other

NYSFEDSAR officers that stated, in pertinent part:

> With the help of John Bulmer and interviews/ discussions with a
> Board member for NJ Sar council, SR3 of NJ's leadership character
> may be unbecoming or in direct violation of the NYSFEDSAR Code
> of Conduct.
>
> \*\*\*
>
> John Bulmer has done some research into this case and has triple
> checked this with sources and cross referenced Mr. Mavros'
> resignation letter:
>
> > *SR3NJ Synopsis:*
> >
> > *Since receiving SR3NJ's application, details have come to
> > light about its leadership and their roles on other Federation
> > teams.*
> >
> > *\*\*\**
> >
> > *It has been brought to our attention that the person named
> > as team leader on SR3NJ's application, Stu Mavros, is a
> > former member of another NYSFEDSAR member team.
> > While on that team, this individual was suspended for a year
> > for disciplinary reasons, specifically harassment and
> > behavior unbecoming of member standards. ... As a result of
> > this individual's actions, 2 members resigned from the team
> > fearing personal safety. Mr. Mavros also resigned from the
> > team on January 21, 2021.*
> >
> > *\*\*\**

10

> I do recommend that we do voting anonymously to minimize any recourse from Mr. Mavros (if he his team is voted in or not). This is a precautionary measure due to findings as illustrated above.

42.    These statements by Mr. Shilling, acting in his capacity as NYSFEDSAR's Chairman, purporting to quote John Bulmer, who was NYSFEDSAR's Vice Chairman, not only repeated Ms. Winterbottom's false accusations without investigating whether those accusations were true, they added yet another layer of falsehood. The deposition testimony of Mr. Shilling and Mr. Bulmer in the New Jersey action proves that, contrary to Mr. Shilling's misrepresentations, Mr. Bulmer had never made the italicized statements above, which Mr. Shilling attributed to him, and that nobody at NYSFEDSAR ever conducted any investigation.

43.    As a result of these false accusations, Plaintiffs' application for membership was tabled.

44.    Before republishing those accusations, Defendants did not conduct a bona fide investigation into them. They did not inform either Plaintiff about the accusations in any way, or who had made them. Without the specifics of which accusations had been conveyed to Defendants, Mr. Mavros was unable to rebut them. Had Defendants disclosed the specifics of the accusations, and who had made them, Mr. Mavros could and would have disproven them.

45.    Plaintiffs never learned that their application had been tabled until well after the filing of the New Jersey Action in November of 2021. Despite Plaintiff's requests by phone and in three separate emails, Defendants refused to tell Plaintiffs what the particular accusations were.

46.    As a result of the republication and dissemination of those false accusations, the Mavroses' reputation in the SAR community - a reputation that they had built up over decades - has been seriously and irreparably damaged. Many of their social ties within the SAR community

11

have been completely severed. They have been ostracized. They have been unable to participate in SAR missions that they would previously have been asked to join.

47. By reason of Defendants' republication of the above mentioned false and slanderous statements, Plaintiffs have suffered significant injury to their good name, have been brought into public and professional disrepute among the community of SAR organizations and their members, to Plaintiffs' detriment as formerly respected members of the SAR community, and Defendants have subjected Plaintiffs to contempt, ridicule, aversion and disgrace. Defendants' unlawful actions have affected Plaintiffs' standing in the SAR community and their ability to work effectively and efficiently with other SAR organizations and individuals.

## FIRST COUNT: FRAUD

48. Plaintiffs repeat and reallege each allegation set forth in the remainder of this Complaint as if set forth in full herein.

49. This Count is brought against both Defendants.

50. On April 30, 2021, Defendants falsely told NYSFEDSAR's officers that NYSFEDSAR had investigated the accusations they had received against Plaintiff Stu Mavros, and that the investigation resulted in "findings." In fact, Defendants had done no such investigation.

51. The purported investigation was a statement of material fact, because it made the accusations against Mr. Mavros and the rest of the NJSAR K9 Committee who joined Plaintiffs' new SAR organization seem reliable.

52. It was reasonable for NYSFEDSAR's other officers and members to rely on this false representation by Mr. Shilling and NYDFEDSAR because Mr. Shilling, as the Chairman of NYSFEDSAR, was in a position of authority.

12

53.     On information and belief, NYSFEDSAR's officers repeated Defendants' misrepresentations to representatives of NYSFEDSAR's member organizations, which included approximately 24 SAR organizations in New York and New Jersey.

54.     Plaintiffs were damaged thereby.

## SECOND COUNT: DEFAMATION

55.     Plaintiffs repeat and reallege each allegation set forth in the remainder of this Complaint as if set forth in full herein.

56.     By virtue of the foregoing, Defendants defamed Plaintiffs by republishing false accusations about Plaintiffs.

57.     Defendants republished the false accusations against Plaintiffs within NYSFEDSAR without attempting to determine their truth or falsity, and with the knowledge that disseminating these defamatory statements would interfere with Plaintiffs' standing as search and rescue members and volunteers. Further, Defendants intentionally concealed the statements made against Plaintiffs by refusing to provide the defamatory accusations to Plaintiffs despite Plaintiffs' numerous requests, which would have allowed Plaintiffs to properly address them.

58.     Defendants took these actions knowingly, recklessly, or negligently.

59.     As a direct result of Defendants' dissemination of false statements, Plaintiffs' Plaintiffs' reputations were damaged, and Plaintiffs have suffered great mental anguish.

60.     No privilege applied to Defendants' republication of the defamations set forth above.

## THIRD COUNT: BREACH OF CONTRACT

61.     Plaintiffs repeat and reallege each allegation set forth in the remainder of this Complaint as if set forth in full herein.

62.     This Count is brought against both Defendants.

13

63.     By proffering membership applications in NYSFEDSAR, Defendants made an offer to potential applicants: if a search and rescue organization made an application, it would be fairly and duly considered and brought to a fully informed vote of NYSFEDSAR's membership.

64.     Plaintiffs accepted this offer and performed their part by submitting an application containing all of the information set forth above. Plaintiffs also participated in Defendants' quarterly meetings in the hope that their application would be considered and voted on.

65.     Defendants breached this agreement by tabling Plaintiffs' application without informing Plaintiffs of the reasons. Without those specifics, Plaintiffs could not meaningfully respond thereto.

66.     Plaintiffs were damaged thereby.

## FOURTH COUNT: LIBEL PER SE

67.     Plaintiffs repeat and reallege each allegation set forth in the remainder of this Complaint as if set forth in full herein.

68.     The misconduct complained of herein constituted slander per se.

69.     Plaintiffs were damaged thereby.

## FIFTH COUNT: SLANDER PER SE

70.     Plaintiffs repeat and reallege each allegation set forth in the remainder of this Complaint as if set forth in full herein.

71.     The misconduct complained of herein constituted slander per se.

72.     Plaintiffs were damaged thereby.

## SIXTH COUNT: PRIMA FACIE TORT

73.     Plaintiffs repeat and reallege each allegation set forth in the remainder of this Complaint as if set forth in full herein.

14

74.    By virtue of the foregoing, Defendants committed prima facie tort, for which they are liable to Plaintiffs.

75.    Plaintiffs were damaged thereby.

**WHEREFORE**, Plaintiffs demand judgment for the following relief:

a.  Compensatory damages;

b.  Consequential damages;

c.  Punitive damages;

d.  Declaratory relief;

e.  Prejudgment interest at the maximum legal rate;

f.  All available injunctive and equitable relief;

g.  Costs and expenses;

h.  Attorneys' fees; and

i.  Such other relief as the Court deems appropriate.

Dated: May 10, 2024

By:    */s/ Darius Marzec*
       Darius A. Marzec, Esq.
       Marzec Law Firm, P.C.
       776A Manhattan Avenue, Suite 104
       Brooklyn, NY 11222
       718-609-0303
       dmarzec@marzeclaw.com

## VERIFICATION

STATE OF NEW JERSEY          )
                             ) ss.:
COUNTY OF SUSSEX             )

**STU MAVROS**, being duly sworn, deposes and says:

I am a Plaintiff in this proceeding. I have read the Verified Complaint and know the

contents thereof and the same are true to my knowledge, except those matters therein which

are stated to be alleged on information and belief, and as to those matters, I believe them

to be true.

_____
STU MAVROS

On the _10th_ day of May 2024, before me personally appeared STU MAVROS, personally
known to me or provided to me on the basis of satisfactory evidence to be the individual
whose name is subscribed to the within instrument and acknowledged to me that he
executed the same in his capacity, and that by his signature on the instrument, the individual
or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public



HARRIET SUMMERELL
NOTARY PUBLIC OF NEW JERSEY
ID # 50031752
My Commission Expires Feb. 09, 2026

## VERIFICATION

STATE OF NEW JERSEY     )
                                 ) ss.:
COUNTY OF SUSSEX      )

**PAULA MAVROS**, being duly sworn, deposes and says:

I am a Plaintiff in this proceeding. I have read the Verified Complaint and know the contents thereof and the same are true to my knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters, I believe them to be true.

_Paula S Mavros_
PAULA MAVROS

On the _10th_ day of May 2024, before me personally appeared PAULA MAVROS, personally known to me or provided to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual or the person upon behalf of which the individual acted, executed the instrument.

_Harriet Summerell_
Notary Public

HARRIET SUMMERELL
NOTARY PUBLIC OF NEW JERSEY
ID # 50031752
My Commission Expires Feb. 09, 2026

